IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MIGANO ABDI, and DUHIRA HASSAN,<br><br>Plaintiffs,<br><br>vs.<br><br>JESSICA JENNINGS, Child and family service specialist; NEBRASKA MEDICAL CENTER, and NEBRASKA DEPT. OF HEALTH AND HUMAN SERVICES, CPS DIVISION,<br><br>Defendants. | **8:25CV515**<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs Migano Abdi ("Adbi") and Duhira Hassan ("Hassan") (collectively "Plaintiffs"), both non-prisoners, filed a pro se Complaint on August 25, 2025. Filing No. 1. Plaintiffs were given leave to proceed in forma pauperis. Filing Nos. 5 & 8. The Court now conducts an initial review of Plaintiffs' Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e) and, for the reasons set forth below, finds that it is but, in lieu of dismissal, shall sua sponte allow Plaintiffs to file an amended complaint in accordance with this Memorandum and Order.

## I. SUMMARY OF COMPLAINT

The subject matter of this case arises from the care of Plaintiffs' child by defendants Nebraska Child Protective Service ("Nebraska CPS") agent Jessica Jennings "Jennings"), Nebraska Department of Health and Human Services ("Nebraska DHHS") and Nebraska Medical Center ("NMC"). Filing No. 1 at 4.

Specifically, Plaintiffs allege the following:

The child, previously in mental health treatment, was physically harmed, drugged, and sexually abused in Nebraska state care, and CPS/DHS

ignored multiple missing case reports.  Despite being in state custody, the child has spent significant time on the streets, facing harm with even CPS agents unaware of her location. The hospital barricaded parents and family from seeing child in patient room These actions violated parental rights.

. . . .

The juvenile courts and state agencies ignored multiple reports of physical and sexual abuse, and the child, previously in mental health treatment, was cut off from medication, family, siblings, and cultural practices, with the family's cultural beliefs disregarded entirely.  While in state custody, critical medical records, police reports, and incident reports were ignored or withheld, even though the agencies knew the child was at risk.

Id. at 4-5.

Plaintiffs further assert that:

As minority parents, we were unjustly treated and discriminated against, further intensifying our psychological harm.  Our rights as parents and as civilians, including the fundamental human right to protect and care for our child, were repeatedly violated.  We assert that, had this been a white child, the situation would have been handled with immediate attention and care, highlighting the racial disparities in treatment.

Id. at 6.

Plaintiffs seek restoration of parental rights, justice for the child, accountability for all responsible parties, investigation of state custody practices, and at least $75,000 in monetary damages.  Id.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  See 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a

claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

While "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties," *Topchian v. J.P. Morgan Chase Bank*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted), complaints filed by *pro se* plaintiffs must contain enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Twombly*, 550 U.S. at 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### III. DISCUSSION

### A. Jurisdiction

Plaintiffs allege this Court has jurisdiction over this suit under both 28 U.S.C. § 1331 ("Federal Question"), and 28 U.S.C. § 1332 ("Diversity"). Filing No. 1 at 3. Upon review of the Complaint, as currently pleaded, this Court only has Federal Question jurisdiction over this matter.

### 1. Diversity

Diversity jurisdiction applies to actions between "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . . ; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a). The Court cannot exercise diversity jurisdiction over a matter "unless *each*

3

defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978).

Here, Plaintiff Abdi alleges he is a citizen of Kansas and all named defendants are citizens of Nebraska, and as Abdi seeks damages in excess of $75,000, this matter could potentially proceed under this Court's diversity jurisdiction. However, the complaint contains no information as to the citizenship of Plaintiff Hassan, without which diversity jurisdiction cannot be established.

If Plaintiffs wish this Court to proceed under diversity jurisdiction, Plaintiffs must amend their complaint to address the citizenship of Plaintiff Hassan.

**2. Civil rights**

To proceed under 42 U.S.C. § 1983, plaintiffs must allege a violation of rights protected by the United States Constitution or created by federal statute *and also* must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49.

Based on the facts as pleaded, it appears Plaintiffs allege the defendants were acting under color of law as required by the statute. As such, this Court appears to have Federal Question jurisdiction over the allegations in the Complaint and shall perform its initial review of the complaint under 42 U.S.C. § 1983.

## B. Claims and Relief Sought

### 1. Suits against the state

A state, its agencies and instrumentalities, and its employees in their official capacities generally are not considered "persons" as that term is used in § 1983, and are not suable under the statute, regardless of the forum where the suit is maintained. *See Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991); *see also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). In addition, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and state employees sued in their official capacities. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995).

Here, Plaintiffs name Nebraska CPS agent Jennings, the Nebraska DHHS, and NMC as defendants.  For the reasons set forth above, Plaintiffs' claims cannot proceed against the Nebraska DHHS or NMC both as they are not persons under the statute and as claims against them are barred by the Eleventh Amendment.  And, to the extent Plaintiffs' claims against Jennings are brought in her official capacity, they are construed as claims against her public employer, which here is the State of Nebraska.  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("A suit against a public employee in his or her official capacity is merely a suit against the public employer.").  As the State of Nebraska is immune from suit, any claim against Jennings in her official capacity must also be dismissed.

    **2. *Restoration of parental rights and return of their child***

Plaintiffs' claims, while not wholly clear, appear to arise from allegations that state officials removed plaintiffs' daughter from their custody at some point and that their child, who remains in the state's care, has gone missing. As part of the remedy sought, Plaintiffs pursue injunctive relief returning their child to their custody and ending the alleged continuing violations of Plaintiffs' custodial rights. Filing No. 1 at 6.

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising appellate review of state court judgments, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), because "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (citation and internal quotations omitted). The *Rooker-Feldman* doctrine generally applies where a case is brought by a loser in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, and inviting the district court to review and reject that judgment. *See Exxon Mobile Corp. v. Saudia Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* is, however, a narrow doctrine that does not extend to a case merely "because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. Only where the alleged injury for which a plaintiff seeks redress stems directly from the state court judgment itself, *rather than from some separate injury caused by the defendant*, does the federal court have no jurisdiction to review. *Skit Intern., Ltd. v. DAC Techs. of Arkansas, Inc.*, 487 F.3d 1154, 1157 (8th Cir.

6

2007) (emphasis added).  Therefore, the crucial inquiry in determining if a claim is so inextricably intertwined with a state judgment that it cannot be heard by a federal court has been explained as hinging upon a determination of "whether the federal plaintiff seeks to set aside a state court judgment or whether he [or she] is, in fact, presenting an independent claim." *Brokaw*, 305 F.3d at 664-65 (citation omitted).  Put another way, "if a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1018 (8th Cir. 2011) (quoting *Exxon*, 544 U.S. at 293).

In *Younger v. Harris*, 401 U.S. 37 (1971), "the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances."  *See Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir. 1996) (citing *Younger*, 401 U.S. at 43–44).  There are essentially three issues that must be addressed in determining whether to invoke the *Younger* doctrine, which requires this Court to abstain from intervening in ongoing state court proceedings: (1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges.  *See Middlesex v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  If all three questions are answered affirmatively, a federal court should abstain unless it detects "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate."  *Id.* at 435.

7

To the extent the Plaintiffs allege unconstitutional actions by Jennings resulted in state court orders removing the children from their home, *Rooker-Feldman* does not apply as these claims are not a challenge to the state court's orders or judgments. However, to the extent Plaintiffs assert that Jennings acted wrongfully when she enforced the State's order and removed Plaintiffs' children from their care, such a claim is barred by *Rooker-Feldman* as it directly challenges the substance of a removal order and Jenning's actions taken in reliance on it as challenges to the actions to enforce a state court judgment are considered a challenge to the judgment itself. *Dietrich v. City of Grosse Pointe Park*, No. 17-1387, 2017 WL 11645272, at *3 (6th Cir. Sept. 29, 2017) (citing *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006)). And to the extent there are ongoing court proceedings related to the allegedly unconstitutional actions by Jennings, this Court cannot adjudicate such claims under the *Younger* doctrine.

As it is unclear from the allegations in Plaintiffs' Compliant as to whether an order was issued which resulted in the removal of their child from their care (and/or if such proceedings are ongoing), and the nature of Jenning's involvement in the issuance and/or enforcement of any such order, it is unclear if any of Plaintiffs' claims against Jennings may proceed. To resolve this issue, Plaintiffs must amend their Complaint.

### 3. Individual capacity claims against Jennings

Even if Plaintiffs' claims against Jennings in her individual capacity are not barred by *Rooker-Feldman* or *Younger*, Plaintiffs face additional hurdles if any claims may proceed. For the reasons that follow, Plaintiffs must supply additional information as to

the capacity under which Jennings was involved in the matter and plead specific allegations regarding what Jennings did and when to support any of Plaintiffs' claims.

### a. *Jennings may be immune from suit*

Government officials such as case workers have "quasi-judicial absolute immunity when they enforce a court order" for acts they are "required to do under court order or at a judge's direction." *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994) (quoting *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988).  To the extent Jennings acted pursuant to a court-issued order or judgment removing the children from Plaintiffs' care, Jennings is immune from suit under quasi-judicial immunity.

Caseworkers are also protected from suit by their own qualified immunity "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Abdouch v. Burger*, 426 F.3d 982, 987 (8th Cir. 2005) (citing *Littrell v. Franklin,* 388 F.3d 578, 582 (8th Cir. 2004) ("'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'") (quoting *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992))).  When reviewing the actions of a governmental employee in light of qualified immunity, a reviewing court first asks "whether, taken in the light most favorable to the plaintiff, the facts alleged show the [government official's] conduct violated a constitutional right; and second, whether, in the specific context of the case, the right was clearly established." *Id.* (quoting *Swipies v. Kofka,* 348 F.3d 701, 703 (8th Cir. 2003)).

Courts in the Eighth Circuit have held that parents have a substantive due process right in the care and custody of their children that is limited by a state's "potentially conflicting, compelling interest in the safety and welfare of the children . . . particularly in

circumstances where the protection is considered necessary as against the parents themselves." *Abdouch*, 426 F.3d at 987 (internal citations and quotations omitted). Stated another way, "[t]he parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children." *Lux by Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989) (citation omitted).

> To determine if qualified immunity applies,
>
> [i]In the light most favorable to the plaintiff, the Court must "first determine if the facts alleged show the officer's conduct violated a constitutional right; and second, whether, in the specific context of the case, the right was clearly established . . . . The net result of these competing interests is that we must weigh the interests of the state and child against those of the parents to determine whether a constitutional violation has occurred. Under this balancing test, the officials' actions must have been based on a reasonable suspicion of abuse and must not have been disproportionate under the circumstances.

*Abdouch*, 426 F.3d at 987 (internal quotation and citation omitted).

Here, it is unclear from the Complaint what actions Jennings undertook and if she acted as a caseworker when taking those actions (or if not, under what capacity she did act). These pleading deficiencies must be corrected for this Court to determine if any claim against Jennings in her individual capacity may proceed.

### b. *Deficient factual assertions*

Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The allegations must state enough about each claim to "'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Complaint, however, contains no factual allegations from which this Court may reasonably infer that Jennings violated Plaintiffs' rights under the United States Constitution or federal statutes.  For example, while Plaintiffs' Complaint contains an allegation of racially discriminatory treatment, the Complaint does not connect actions Jennings took to that claim.   Therefore, as pleaded, Plaintiffs' Complaint fails to state a plausible claim for relief against any of the named defendants.  *See Krych v. Hvass*, 83 Fed.Appx. 854, 855 (8th Cir. 2003) (holding a court properly dismissed claims against defendants where pro se complaint was silent as to the defendants except for their names appearing in the caption).

As Plaintiffs' Complaint falls far short of federal pleading standards, it is subject to preservice dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.  However, as unlikely as it seems any of Plaintiffs' claims may proceed, this Court sua sponte grants Plaintiffs' leave to amend their Complaint.  In so doing, Plaintiffs must address the following in relation to their individual capacity claims against defendant Jennings only:

1.  Provide Plaintiff Hassan's citizenship if Plaintiffs' wish this Court to exercise diversity jurisdiction.

2.  Provide factual details regarding the actions taken by the State to remove Plaintiffs' child from their custody, including the names of any courts involved, the nature of the proceedings (e.g., removal proceedings), and the outcome of those proceedings (e.g., court orders or administrative agency actions).

11

3.     Provide factual detail regarding Jennings' occupation (e.g., caseworker, administrative assistant, etc.), and the actions she took which clearly explains what Jennings did, when she did it, and how Jennings' actions harmed Plaintiffs.

Plaintiff is advised that any amended complaint they file will supersede their original Complaint.

IT IS THEREFORE ORDERED that:

1.     All claims against defendants the Nebraska Department of Health and Human Services, the Nebraska Medical Center, and Jessica Jennings in her official capacity, are dismissed with prejudice.  The Clerk of Court is directed to terminate the Nebraska Department of Health and Human Services and the Nebraska Medical Center as parties in this case.

2.     Plaintiffs shall have until 30 days from the date of this Memorandum and Order to file an amended complaint that clearly states a claim or claims upon which relief may be granted against Jessica Jennings in her individual capacity in accordance with this Memorandum and Order.  If Plaintiffs fail to file an amended complaint, the remaining claims including those against defendant Jessica Jennings in her individual capacity will be dismissed without further notice and the case shall be closed.

3.     The Court reserves the right to conduct further review of Plaintiffs' claims pursuant to 28 U.S.C. § 1915(e)(2) in the event they file an amended complaint.

4.     The Clerk's Office is directed to set a pro se case management deadline in this case using the following text: **April 27, 2026:** Check for amended complaint.

Dated this 26th day of March, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court